NOT DESIGNATED FOR PUBLICATION

No. 116,453

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RYAN ROBERT JOHNSON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Montgomery District Court; JEFFREY D. GOSSARD, judge. Opinion filed December 15, 2017. Affirmed.

*Clayton J. Perkins*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers* and *Jon Simpson*, assistant solicitor generals, and *Derek Schmidt*, attorney general, for appellee.


Before PIERRON, P.J., ATCHESON, J., and WALKER, S.J.


PER CURIAM: Ryan Robert Johnson appeals his conviction of criminal threat. On appeal, Johnson argues: (1) the district court erred when it denied his motion to dismiss based on the 180-day speedy trial requirement under the Interstate Agreement on Detainers (IAD); (2) the State did not present sufficient evidence to find Johnson guilty of criminal threat beyond a reasonable doubt; (3) the failure to give a voluntary intoxication jury instruction was clearly erroneous; and (4) the reckless form of criminal threat is unconstitutionally overbroad. Finding no errors, we affirm.

1

FACTS

Johnson was charged on December 30, 2014, with criminal threat by causing terror, evacuation, or disruption. In a separate complaint, he was also charged with criminal damage to property on the same day. At the time the charges were filed, Johnson was incarcerated in Pennsylvania and had a detainer from Kansas.

After Johnson was returned from Pennsylvania, a speedy trial determination hearing was held by the district court on May 5, 2016. The State requested a new jury trial date so it would be within the 180-day time limit. The court offered dates it was available to move the jury trial up in order to meet the 180-day time limit, but defense counsel was unavailable for those dates. Defense suggested holding the trial in May, but the court said it would not be able to summon a jury in time. The court exercised a 30-day extension regarding scheduling for speedy trial purposes as it was not able to schedule prior to the 180-day deadline.

Johnson filed a motion to dismiss on June 28, 2015. In his motion, he stated the detainer was placed on him on October 7, 2015, and on December 31, 3015, he requested a final disposition in the matter. Under the IAD, the case was required to be brought to trial within 180 days after the receipt of Johnson's mandatory disposition detainer request. He stated the case should be dismissed with prejudice, as it was not brought to trial within the 180-day time frame. The court denied Johnson's motion.

A jury trial was held on July 14, 2016. Jerry Gilbert, a shift supervisor with the Montgomery County Sheriff's Department, testified that he received a Kansas Department for Children and Families welfare check referral on Vickie Johnson on March 12, 2014. The nature of the referral was alleged physical and mental abuse by her son, defendant Johnson. Gilbert spoke with Vickie on the phone on March 13, 2014, and she stated her son had been causing problems and that she was afraid for her safety.

A few days later, Vickie called 911 and requested an officer be sent to her residence because of Johnson. Gilbert spoke by phone with Vickie about the situation, and she said Johnson had forced his way back into her residence. Johnson had also threatened to kill Vickie and burn the house down.

Jacob Garcia, a deputy with the Montgomery Sheriff's Department, responded to the 911 call made by Vickie. He spoke with Vickie, and she said when she came home Johnson and his wife, Tiffany Johnson, were arguing. Tiffany tried to get away and go into a room and secure the door, but Johnson kicked the door open to get inside. Garcia saw that the metal clasp on the door was broken off and there was a crack down the door as if it was forced open. Garcia also saw there was damage to the actual door frame. Tiffany told Garcia that Johnson had knocked the door open.

Christopher Bishop, a deputy with the Montgomery Sheriff's Department, interviewed Vickie on March 17, 2014. Vickie told Bishop that Johnson had forced his way back into the home, ripped the phone out of the wall, and said, "'Try to call the sheriff now, bitch.'" She also said Johnson told her, "'[I[f I'm going to be on the streets then you're going to be on the streets because I'm going to burn your shit up. Then I am going to be back this afternoon and you ain't going to like what I'm bringing for you.'" In addition, Vickie told Bishop that Johnson said, "'I hate you, mom, you fucking bitch. I wish you would die, but don't worry about it because I'm going to help you get there. I'm going to fucking kill your ass. I hate what you do to me.'" Bishop had a bodycam that he wore at the scene and when he made his report, he played and paused the video. At the time of trial, the bodycam video had been lost in the previous two years before trial.

Vickie testified at the jury trial. She said using words like "kill" was just how her family talked to one another. She said she did not remember Gilbert being at her home or talking to him or the other officer. Vickie said she got mixed up a lot from medication that she was taking. She did not remember Johnson saying he was going to burn down the

3

house or that he was going to kill her. At the time of this incident, Johnson had a broken neck with a metal halo screwed into the bones of his skull. He broke his neck in a car accident in February 2014 and was given a lot of pain medication. Vickie said he often had angry outbursts while on the medication. That night of the alleged threats, in an attempt to stop Johnson and Tiffany from fighting, Vickie grabbed the halo device and hurt him in the process. At the time, Johnson and Tiffany both lived with Vickie. Finally, Vickie said the door Tiffany said Johnson had kicked in had been broken several times over the years.

Tiffany testified that she was married to Johnson, but her name was Tiffany Wells. She said that on the night of the alleged threats, Johnson forced the door open. She also testified it was common to say things like, "'I am going to kill you,'" in their family.

Johnson testified at trial that he did not break the door and that the door had been broken for a long time. He did say there were arguments and disagreements in the home but that he never threatened anyone and denied any of the quoted threats.

The jury found Johnson guilty of criminal threat and not guilty of criminal damage to property. Johnson was sentenced to 14 months in prison and 12 months of postrelease supervision. Johnson has timely appealed from his conviction and sentence.

ANALYSIS

*The 180-day speedy trial deadline under the Interstate Agreement on Detainers*

On appeal, Johnson first claims the district court erred when it denied his motion to dismiss the case because it was outside the 180-day speedy trial deadline under the IAD. Resolution of this issue requires interpretation of the IAD, K.S.A. 22-4401 et seq.

4

Interpretation of a statute is a question of law over which an appellate court has unlimited review. *Neighbor v. Westar Energy, Inc.,* 301 Kan. 916, 918, 349 P.3d 469 (2015).

The speedy trial rights of inmates detained in another state are governed solely by the detainer statutes rather than by general speedy trial statutes. *State v. Angelo*, 287 Kan. 262, 269-70, 197 P.3d 337 (2008).

The IAD states, in pertinent part:

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he [or she] shall be brought to trial within one hundred and eighty (180) days after he [or she] shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his [or her] imprisonment and his [or her] request for a final disposition to be made of the indictment, information or complaint: *Provided*, That for good cause shown in open court, the prisoner or his [or her] counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." K.S.A. 22-4401, Art. III(a).

If the prisoner is not brought to trial within the appropriate speedy trial time frame, the court shall enter an order dismissing the case with prejudice and any detainer based on the case will no longer exist. K.S.A. 22-4401, Art. V(c).

Under the IAD, any continuance granted for good cause shown in open court extends the 180-day time limit provided the prisoner or his counsel is present. K.S.A. 22-4401, Art. III(a); *State v. Waldrup*, 46 Kan. App. 2d 656, 671, 263 P.3d 867 (2011). The language of the statute does not distinguish between a continuance requested by the State or the defendant. The essential question is whether good cause was shown in open court

with either Johnson or his counsel present. While the granting of a continuance is generally within the discretion of the district court, "when a constitutional or statutory right is involved, that discretion is limited and 'there is a greater need for the trial judge to articulate the reasons for any discretionary decision.' [Citation omitted.]" *State v. Burns*, 44 Kan. App. 2d 289, 292, 238 P.3d 288 (2010).

In *State v. Buie*, No. 106,156, 2013 WL 678219 (Kan. App. 2013) (unpublished opinion), a panel of our court found the continuances granted by the district court were granted for good cause based on remarks made by the district court at the hearing. The court stated that counsel provided reasonable explanations for missing the hearings due to inclement weather and a scheduling conflict. 2013 WL 678219, at *4.

Here, the State requested a new jury trial date in order to comply with the 180-day time limit under the IAD. The district court offered to advance the trial to various dates it had available on its calendar which were within the 180 days, but defense counsel had scheduling conflicts with those dates. Defense counsel did suggest moving the trial to May, but the court stated it would not be able to summon a jury in time, as that was just a few weeks away. Because of the scheduling conflicts, the court granted a 30-day continuance as it was not able to schedule prior to the 180-day deadline. At this hearing, defense counsel was present in court and there was a clear scheduling conflict among the parties, mostly caused by defense counsel's obligations, that kept the district court from meeting the 180-day deadline under the IAD. Under these circumstances, we have no hesitation in finding that the continuance was granted for good cause and the district court did not err when it granted a 30-day continuance past the 180-day deadline under the IAD.

*Sufficiency of the State's evidence at trial*

For his second issue on appeal, Johnson argues the State presented insufficient evidence to support the contention that he communicated a threat to commit violence with the intent to place another in fear. He also argues there is even less evidence to support that he made a threat to commit violence with reckless disregard of the risk of causing fear.

The standard we are to apply has been clearly articulated by our Supreme Court:

"'When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility.' [Citations omitted.]" *State v. Dunn*, 304 Kan. 773, 821-22, 375 P.3d 332 (2016).

It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

K.S.A. 2016 Supp. 21-5415(a)(1) states "[a] criminal threat is any threat to: (1) Commit violence communicated with intent to place another in fear . . . or in reckless disregard of the risk of causing such fear."

Here, Deputy Bishop testified that Vickie told him Johnson had forced his way back into her home, ripped the phone out of the wall, and said, "'Try to call the sheriff now, bitch.'" Vickie also said Johnson told her, "'[I]f I'm going to be on the streets then you're going to be on the streets because I'm going to burn your shit up. Then I am going

to be back this afternoon and you ain't going to like what I'm bringing for you.'" Bishop further testified that Vickie told him Johnson said to her, "'I hate you, mom, you fucking bitch. I wish you would die, but don't worry about it because I'm going to help you get there. I'm going to fucking kill your ass. I hate what you do to me.'"

Vickie obviously felt sufficiently alarmed by these events to have called the police and reported the argument and threats that occurred in her home. While at trial, Vickie testified the family used the word "kill" all the time, but this explanation is inconsistent with the fact she called 911 on this occasion and reported the threats to a law enforcement officer.

Viewing the trial testimony in the light most favorable to the State, it is clear a reasonable jury would have found the language Johnson used when he spoke to his mother a criminal threat either with intent to place Vickie in fear or with reckless disregard of the risk of causing fear. The State presented sufficient evidence for a reasonable jury to find beyond a reasonable doubt that Johnson was guilty of criminal threat.

*Failure to give a voluntary intoxication jury instruction*

Johnson's third allegation of trial error is that the district court improperly failed to give a jury instruction on voluntary intoxication. Johnson argues the evidence at trial demonstrates he was prescribed heavy narcotics and that his medication changed his mood, causing him to have angry outbursts. Given that he was on these pain medications during the incident, he argues he was in an intoxicated state and therefore unable to control his outbursts and unable to form the intent to place another in fear.

Johnson admits he did not request a voluntary intoxication instruction at trial. When a jury instruction issue is not properly preserved, the court may grant relief if the

8

instruction was clearly erroneous. *State v. Kershaw*, 302 Kan. 772, 776, 359 P.3d 52 (2015).

Once again our Supreme Court has given extensive guidance in this area:

"When analyzing jury instruction issues, an appellate court follows a three-step process:

'(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.' [Citation omitted.]" *State v. Pfannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015).

"At the second step, we consider whether the instruction was legally and factually appropriate, employing an unlimited review of the entire record. [Citation omitted.] If the district court erred, and the error did not violate a constitutional right, 'the error is reversible only if [the court] determine[s] that there is a "reasonable probability that the error will or did affect the outcome of the trial in light of the entire record."' *State v. Plummer*, 295 Kan. 156, 168, 283 P.3d 202 (2012) (quoting *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 [2011], *cert. denied* 565 U.S. 1221 [2012])." *State v. Louis*, 305 Kan. 453, 457-58, 384 P.3d 1 (2016).

K.S.A. 2016 Supp. 21-5205(b), the voluntary intoxication statute, states:

"An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

A voluntary intoxication defense is used to negate the intent element of a specific intent crime. *State v. Hilt*, 299 Kan. 176, 192, 322 P.3d 367 (2014). K.S.A. 2016 Supp.

9

21-5202(h) states that a specific intent crime is any crime "in which the mental culpability requirement is expressed as 'intentionally' or 'with intent.'" Criminal threat is "any threat to: (1) [c]ommit violence communicated with intent to place another in fear." K.S.A. 2016 Supp. 21-5415(a)(1). Thus, because it has the requisite mental culpability, criminal threat is a specific intent crime.

Johnson's own testimony at the jury trial contradicts his claim that a voluntary intoxication instruction should have been given. First, Johnson testified that he remembered dates in question and specific statements that he made to Vickie. He testified at trial that there were arguments and disagreements in the home but that he did not threaten his mother and denied the quoted threats. In addition, Johnson stated he did not break the door and that the door had been broken for a long time.

In *State v. Hernandez*, 292 Kan. 598, 607, 257 P.3d 767 (2011), the court stated the defendant's ability to provide a "detailed recollection of the events on the night of the offense" demonstrated his mental faculties were intact. In order to receive a voluntary intoxication instruction, a defendant must present evidence that his or her consumption of alcohol or drugs impaired his or her mental faculties in a way that made him or her unable to form the required intent. 292 Kan. at 607. Johnson only presented evidence that he consumed pain medications, not that the medication impaired his mental faculties. In summary, we find no error in the failure of the district court to give a jury instruction on voluntary intoxication.

*Constitutionality of the criminal threat statute*

As his final appellate issue, Johnson argues the reckless form of the criminal threat statute under K.S.A. 2016 Supp. 21-5415 is unconstitutionally overbroad because it criminalizes protected speech under the First Amendment to the United States

10

Constitution. Johnson did not preserve this issue for appeal because it was neither raised nor argued before the district court.

But Johnson's argument addresses a fundamental right, and he states resolving the issue is necessary to serve the ends of justice. Therefore, this challenge may be raised for the first time on appeal. *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010).

In addition, to raise a constitutional issue Johnson must show that he has standing to bring this challenge. See *Gannon v. State*, 298 Kan. 1107, 1122, 319 P.3d 1196 (2014). For standing, the plaintiff must show he or she suffered a cognizable injury and a causal connection between the injury and the challenged conduct. 298 Kan. at 1123. However, when an overbreadth challenge that seeks to protect First Amendment rights under the United States Constitution is brought, standing exists even if the litigant asserts only the rights of third parties because "'the mere existence of the statute could cause a person not before the Court to refrain from engaging in constitutionally protected speech.' [Citations omitted.]" *State v. Williams*, 299 Kan. 911, 918-19, 329 P.3d 400 (2014). Therefore, Johnson has standing.

When analyzing this constitutional challenge, the court must presume the law is constitutional, resolve all doubts in favor of validating the law, uphold the law if there is a reasonable way to do so, and strike down the law only if it is clearly unconstitutional. *City of Lincoln Center v. Farmway Co-Op, Inc.*, 298 Kan. 540, 544, 316 P.3d 707 (2013). The burden to establish the statute is unconstitutional rests with Johnson.

When a statute is overbroad, it punishes conduct that is constitutionally protected. *Dissmeyer v. State*, 292 Kan. 37, Syl. ¶ 1, 249 P.3d 444 (2011). A statute is overbroad when a significant part targets protected activity and there is no satisfactory method of severing the law's constitutional applications from its unconstitutional applications. *State ex rel. Murray v. Palmgren*, 231 Kan. 524, 533, 646 P.2d 1091 (1982).

11

In *Watts v. United States*, 394 U.S. 705, 707-08, 89 S. Ct. 1399, 22 L. Ed. 2d 664 (1969), the United States Supreme Court recognized "true threats" as a type of speech that is not protected by the First Amendment and, therefore, is subject to regulation. "True threats" encompass statements "where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003). "True threats" are criminally actionable, unprotected free speech. 538 U.S. at 359-60.

Recently, in *State v. Boettger*, No. 115,387, 2017 WL 2709790, at *3-5 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* July 24, 2017, a panel of this court addressed this exact challenge. In *Boettger*, the defendant pointed to *Black* as does Johnson, to argue intent is the requisite standard for true threats. *Black* involved a criminal statute that expressly included a showing of subjective intent. The Virginia statute banned cross burning with an intent to intimidate a person or group of persons. The Supreme Court held the statute unconstitutional because the "prima facie evidence" provision meant that a person could be convicted of cross burning done in a way other than to intimidate. *Black* invalidated the Virginia statute because the statute was overbroad in that it could criminalize burning a cross for any reason or no reason. 538 U.S. at 365.

The *Boettger* court demonstrated that our criminal intent statute expressly says that recklessness is a culpable mental state. 2017 WL 2709790, at *4. See K.S.A. 2016 Supp. 21-5202(a) ("A culpable mental state may be established by proof that the conduct of the accused person was committed 'intentionally,' 'knowingly' or 'recklessly.'"). Kansas cases also demonstrate that recklessness is a culpable mental state. See *State v. Johnson*, 304 Kan. 924, 936, 376 P.3d 70 (2016) ("'Reckless conduct is conduct done under circumstances that show a realization of the imminence of danger to the person of another and a conscious and unjustifiable disregard of that danger.'"); *State v. Ford*, No. 112,877,

12

2016 WL 2610259, at *5 (Kan. App. 2016) (unpublished opinion) ("'Reckless means driving a vehicle under circumstances that show a realization of the imminence of danger to another person or the property of another where there is a conscious and unjustifiable disregard of that danger.'"), *rev. denied* 305 Kan. 1254 (2017).

The Kansas cases and statutes regarding recklessness illustrate that "[s]omeone who acts recklessly with respect to conveying a threat necessarily grasps that he [or she] is not engaged in innocent conduct. He [or she] is not merely careless. He [or she] is aware that others could regard his [or her] statements as a threat, but he [or she] delivers them anyway." *Elonis v. United States*, 575 U.S. ___, 135 S. Ct. 2001, 2015, 192 L. Ed. 2d 1 (2015) (Alito, J., concurring in part and dissenting in part). "Recklessness is sufficient *mens rea* to separate wrongful conduct from otherwise innocent conduct." *Boettger*, 2017 WL 2709790, at *5.

We agree with the holding in *Boettger* and likewise conclude that K.S.A. 2016 Supp. 21-5415(a)(1) does not criminalize constitutionally protected conduct by criminalizing threats to commit violence communicated in reckless disregard of the risk of causing fear in another. It is therefore not overbroad, and Johnson's contentions are without merit.

Affirmed.